Ricardo Z. **RESENDEZ**, Appellant,

v.

Sam **GARRISON**, Warden, N. C. Central Prison, Appellee.

No. 74–1930.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1975.

Decided Dec. 3, 1975.

Joseph J. Kalo, Chapel Hill, N. C. [Court-appointed], for appellant.

Richard N. League, Asst. Atty. Gen. of N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and WAT-KINS, Senior District Judge.

HAYNSWORTH, Chief Judge:

The question is whether Resendez deliberately bypassed state appellate remedies thereby foreclosing federal court consideration of his federal claims. The district court found a deliberate bypass and denied the writ of habeas corpus. We reverse and remand to the district court for a hearing on the merits of Resendez's claims.

On November 28, 1969 a jury in Robeson County, North Carolina convicted Resendez of felony murder, kidnapping and escape. He received a life sentence. After the verdict, Resendez conferred with his attorneys concerning an appeal, and they advised that there were no adequate grounds for an appeal and that if he should be successful on appeal, a new jury upon retrial might sentence him to death.

At that time in North Carolina, a jury in a capital case, such as felony murder, possessed absolute discretion to decide whether a defendant received a life sentence or the death penalty upon conviction. N.C.Gen.Stat. §§ 14–17 (1969). Resendez's attorneys reckoned that an appeal, a reversal, and a subsequent retrial might lead to the imposition of the death penalty and so informed Resendez.[1] Confronted with this dilemma, Resendez chose not to appeal. Such a rational decision, while it may foreclose state post-conviction remedies, is not that kind of deliberate bypass of the state court system that precludes legitimate constitutional assertions in the federal courts.

The Supreme Court has held that the motivation behind the individual's decision not to appeal determines whether the person has engaged in a deliberate bypassing of state procedures, foreclosing federal remedies. *Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In that case, Noia was confronted with the choice of remaining satisfied with life imprisonment or appealing, which if successful, might lead to retrial and the imposition of the death sentence. Noia, like Resendez, opted not to appeal, and the court refused to interpret his actions as a strategic circumvention of state procedures.

In a similar case in this court, *Wilson v. Bailey,* 375 F.2d 663 (4th Cir. 1967), we decided that a North Carolina defendant's failure to appeal his first degree murder conviction, following a recommendation of life imprisonment by the jury, was not a deliberate bypass where his attorneys counselled him that upon a successful appeal and retrial he would face a possible death penalty if found guilty or commitment to the state mental asylum if his insanity defense prevailed. *Id.* at 669. Now, as then, we believe that an intelligent, rational choice not to appeal when exercise of the right to appeal is threatened with harsh consequences, is not such a deliberate bypass of the state court system as to constitute a waiver of his right to federal review of federal questions.

---

1. Resendez also claims he was under the impression that, if he appealed, he would be put to trial on a related rape charge which was subsequently dismissed.

Accordingly, we reverse and remand for a hearing on the merits of Resendez's claims.

*Reversed.*

WATKINS, Senior District Judge (dissenting):

Appellant, during the course of a felonious escape, shot and killed a guard, and kidnapped another guard. In November, 1969 he was convicted by a jury of first degree murder, felonious escape and kidnapping. The jury imposed sentences of life imprisonment, two years and ten to fifteen years, respectively, to be served consecutively.

A few days later Appellant wrote to one of his attorneys, thanking him for all he had done, and stating:

. . . I have decided not to appeal my case. The only satisfaction I received from the verdict is the fact that we beat the Solicitor. . . . If the Solicitor had stuck to the bare facts they could have gotten the death penalty . . . . .

About a month later he wrote to his other attorney, and among other things said:

. . . I don't want to appeal, but I might try a post-conviction if I see fit at a later date.

Appellant did file a first and second "Appeal for Writ of Review in Forma Pauperis" in the State courts, on the second of which a plenary hearing was held. Relief was denied, largely on the ground that Appellant had knowingly, understandingly, and voluntarily waived his right to appeal.

In the habeas corpus case below, Judge Butler held that this "finding is amply supported by the record." He also made his own finding that Appellant " 'deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.' *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963)."

The majority opinion in this case relies upon *Fay v. Noia,* but does not mention the qualification therein:

This is not to say that in every case where a heavier penalty, even the death penalty, is a risk incurred by taking an appeal or otherwise foregoing a procedural right, waiver as we have defined it cannot be found.

372 U.S. 391, 440, 83 S.Ct. 822, 849.

The majority opinion does not discuss or even mention, *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).[1] There the Court said:

Petitioner's final argument is that harsher sentences on retrial are impermissible because, irrespective of their causes and even conceding that vindictiveness plays no discernible role, they have a "chilling effect" on the convicted defendant's exercise of his right to challenge his first conviction either by direct appeal or collateral attack. What we have said as to *Pearce* demonstrates that it provides no foundation for this claim. To the contrary, the Court there intimated no doubt about the constitutional validity of higher sentences in the absence of vindictiveness despite whatever incidental deterrent effect they might have on the right to appeal. . . .

412 U.S. at 29, 93 S.Ct. at 1984 (footnote omitted).

*Chaffin* also expressly holds that:

The choice occasioned by the possibility of a harsher sentence, even in the case in which the choice may in fact be 'difficult,' does not place an impermissible burden on the right of a criminal defendant to appeal or attack collaterally his conviction.

412 U.S. 17, 35, 93 S.Ct. 1977, 1987.

As examples of difficult choices, the Court referred to the problem confronting a defendant, in a case in which the jury determines guilt and penalty in a single non-bifurcated trial, as to whether he should forego his right to remain si-

---

1. The writer of this opinion did refer to *Chaffin* during oral argument. *Chaffin* is not cited in the briefs on either side.

lent on the issue of guilt, in order to be able to argue his case for mitigation of punishment 412 U.S. at 31–33, 93 S.Ct. 1977; and the choice of accepting a "plea bargain" or of going to trial. 412 U.S. 30–31, 93 S.Ct. 1977.

That the choice may be difficult does not prevent it from being a knowing, understanding and voluntary choice. Here the choice was to by-pass his unchilled right to appeal.

Moreover, it is not clear to the writer that the decision of the majority will be to Appellant's benefit. In *Fay v. Noia,* the Supreme Court majority did not remand for a new trial, but ordered the release of the Appellant. Here the case is remanded for a hearing on the merits. If as a result of that hearing it should be determined that Appellant is entitled to the issuance of the writ, the State of North Carolina almost certainly would be allowed a reasonable time to grant a belated appeal, or to retry the Appellant. On such retrial a jury might assess the death penalty, a result that Appellant studiously sought to avoid.